IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Deep East Texas Self-Insurance Fund, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | **CIVIL ACTION NO:  2:05CV428** |
| v. | § | Judge Davis (Jury Demanded) |
| | § | |
| SVB Underwriting, Ltd., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT SVB UNDERWRITING, LTD.'S
MOTION FOR SUMMARY JUDGMENT BASED ON *GANDY***

Dated:  November 30, 2006

Robert S. Harrell
State Bar No. 0941350
rharrell@fulbright.com
Andrew Price
State Bar No. 24002791
Heather K. Fleniken
State Bar No. 24001266
John D. Sheppard
State Bar No. 24051331
Fulbright & Jaworski L.L.P.
1301 McKinney St., Suite 5100
Houston, TX  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

William Cornelius
State Bar No.  04834700
Wilson, Sheehy, Knowles, Robertson &
    Cornelius, P.C.
909 ESE Loop 323, Suite 400
Tyler, Texas 75701
Telephone: 903-509-5000
Fax: 903-509-5091
wc@wilsonlawfirm.com

Peter F. Lovato III
ARDC No. 1695940
plovato@bswb.com
Ellen D. Jenkins
ejenkins@bswb.com
ARDC No. 6231011
Boundas, Skarzynski,
    Walsh & Black, LLC
200 E. Randolph Drive, Suite 7200
Chicago, Illinois  60601
Telephone:  (312) 946-4200
Facsimile:  (312) 946-4272

## PRELIMINARY STATEMENT

In *State Farm Fire & Casualty Company v. Gandy*, [1] decided in 1996, the Texas Supreme Court brought to an end so-called "sweetheart deals."  In these deals, the plaintiff agrees not to execute on any judgment against the defendant.  In return, the defendant agrees to a shortened trial (or judgment without a trial) and an assignment to the plaintiff of its claims against its insurer (including claims for bad faith).  *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996).  According to the supreme court, these deals violate public policy for several different reasons, including that the insurer is required to pay a judgment that did not result from a "fully adversarial proceeding."  *Id*.

Since 1996, creative plaintiffs' lawyers have devised schemes to evade the *Gandy* rule, but without success.[2]  This case is merely another attempt to do so, and likewise should be rejected.

The operative facts are not in dispute.  This case arises out of an underlying case that is now concluded (the "Underlying Lawsuit").  In the Underlying Lawsuit, Deep East Texas Self Insurance Fund ("Deep East") sued Cunningham Lindsey Claims Management, Inc. ("Cunningham Lindsey") for breach of contract and professional negligence in connection with its handling of insurance claims against Deep East's subscribers.  The Underlying Lawsuit ended with a summary bench trial under rules contained in an agreement between Cunningham Lindsey and Deep East by which Cunningham Lindsey would not be at risk of ever paying the judgment.

---

[1] Canadian law applies to the interpretation of the Policy.  Texas law applies to this motion, however, because the mediation agreement was entered into by two Texas parties in Texas in order to settle a lawsuit in Texas state court.  The assignment and covenant to limit execution are similarly governed by Texas law.

[2] *See, e.g., First Gen. Realty Corp. v. Maryland Cas. Co.*, 981 S.W.2d 495, 498 (Tex. App. – Austin 1998, pet. denied) (holding that an underlying judgment was not binding on the defendant's insurer pursuant to *Gandy*); *Burney v. Odyssey Re (London) Ltd.*, 169 Fed. App'x. 828, 829 (5th Cir. 2006) (same).

In return, Cunningham Lindsey agreed to assign to Deep East its rights against its insurers.

Now, Deep East has brought suit as the assignee against one of Cunningham Lindsey's insurers, SVB Underwriting, Ltd. n/k/a Novae Underwriting, Ltd. ("SVB"),[3] in an attempt to collect on the judgment in the Underlying Lawsuit.

Deep East's claims in this suit fail as a matter of law.  Because Deep East obtained the judgment on which it sues without a fully adversarial trial, that judgment is not binding on SVB and cannot serve as the basis of any claim against SVB.  Further, Deep East has no standing to assert any claims against SVB because the purported assignment between Deep East and Cunningham Lindsey is void.  Additionally, because Cunningham Lindsey has not suffered a "Loss" under the insurance contract, SVB owes Deep East nothing.  Quite simply, because Cunningham Lindsey owes Deep East nothing, neither do Cunningham Lindsey's insurers.  SVB therefore moves for summary judgment pursuant to Federal Rule Civil Procedure 56.

## SUMMARY JUDGMENT EVIDENCE

Attached to and incorporated into this motion is the summary judgment evidence listed in the Appendix.  Citations to the appendix will be noted as "App."

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Deep East is an association of governmental entities that provides workers' compensation insurance coverage to their employees.  Cunningham Lindsey served as Deep East's third-party administrator for its insurance claims from 1974 to 2002.  App. 3.  Cunningham Lindsey has had no employees and no assets since March 15, 2004.  App. 10-11.  Cunningham Lindsey ceased business operations on that date as a result of an asset sale.  *Id.*  It has no plans to operate again. *Id.*  At the time Cunningham Lindsey closed its doors, it was "deeply insolvent."  *Id.*

---

[3] SVB is only one of the Underwriters of the Policy at issue in this lawsuit, but the parties have agreed that SVB would appear and defend this suit solely on its own behalf.

SVB is a limited liability company registered in England and Wales with its registered office and principal place of business in London, England.   Fairfax Financial Holdings ("Fairfax") is a Canadian holding company that owns various insurance interests.  App. 10-11.  The corporate headquarters of Fairfax is in Toronto, Canada.  App. 11B  Fairfax is the ultimate parent of Cunningham Lindsey.  *Id.*[4]

## I.   THE INSURANCE COVERAGE AT ISSUE

SVB is one of many Underwriters at Lloyd's, London who, together with other companies and co-insurers (collectively with the Lloyd's Underwriters, the "Underwriters"), undertook to bind themselves to the terms of Policy No. 823/FD0000493 (the "Policy") issued to Fairfax.

The Policy was a primary, not an excess, policy of insurance.  App. 19.  The Policy has a $250 million aggregate Limit of Liability with a $1 million deductible.  App. 21-24.  Subject to all of its terms, limitations, and conditions, the Policy afforded certain coverage to Cunningham Lindsey as a Subsidiary of Fairfax.  App. 21-51.  Cunningham Lindsey purchased a $1 million policy from AIG to cover the Policy's deductible.  App. 52-56.

The Errors and Omissions Coverage Section of the Policy states:

A.       Underwriters shall pay on behalf of the Assureds Loss resulting from any Claim first made against the Assureds for a Wrongful Act in the performance of or failure to perform Professional Services.

App. 27.  Loss is defined as "damages, judgments and Costs, Charges and Expenses incurred by any of the Assureds . . . "  *Id.*

The Policy provides that it is the sole right and duty of the *insured*, and not the insurer, to "investigate and defend" all claims against it.  App. 30.  Therefore, there are no "duty to defend"

---

[4] Cunningham Lindsey Group, Inc., another Canadian company whose stock trades on the Toronto Stock Exchange, is an intermediary owner of the Cunningham Lindsey entity relevant to this case.  Cunningham Lindsey Group, Inc. is owned by Fairfax.  App. 10-11B.

issues associated with this Policy.

The Policy also states that the Assureds "agree that they shall not take any action which in any way increases Underwriters' exposure under this Policy." *Id.*

Finally, the Policy dictates that the terms of the Policy may not be "deemed waived or changed except by written endorsement or rider issued by Underwriters to form part of this Policy." *Id.*

## II.    THE UNDERLYING LAWSUIT

On January 24, 2003, Deep East sued Cunningham Lindsey in Texas state court in Tyler alleging that Cunningham Lindsey had committed professional malpractice when it negligently overpaid claims as the third-party administrator for Deep East.  App. 1-8.

Cunningham Lindsey notified AIG about the Underlying Lawsuit on February 5, 2003. App. 67.  There is no evidence, however, that Cunningham Lindsey ever gave notice of the Underlying Lawsuit to SVB in accordance with the Policy.  App. 12-12C.

### A.    *Cunningham Lindsey loses its expert.*

As the case progressed, it became clear that it would "be a classic swearing match of experts," and that the "case boil[ed] down to the jury assessment of the credibility of the experts at trial."  App. 57-59.  Deep East's expert testified that Cunningham Lindsey's claims handling did not meet the required professional standards and that Deep East's damages were between $3 and $9 million.  App. 58.  Cunningham Lindsey's expert opined that Cunningham Lindsey had met the required professional standards and, if not, that any overpayments totaled less than $50,000. *Id.*

Cunningham Lindsey's expert had a prior conviction for possession of marijuana.  App. 60-62.  Lawyers for Cunningham Lindsey knew about the conviction, but they retained him as an expert nevertheless.  *Id.*  As the trial approached, Deep East uncovered the expert's conviction

and that he may have lied about it on his licensing applications to the Texas Department of Insurance.  App. 63.  After Deep East's discovery, the expert withdrew on July 5, 2005, leaving Cunningham Lindsey without an expert on the central issue in the case, Cunningham Lindsey's claims handling.  App. 64-65.  The court denied Cunningham Lindsey's request for additional time to find a replacement expert.  App. 184-85.  Cunningham Lindsey thereafter sought reconsideration, which was denied.  App. 68, 186.  AIG recognized this development as "a death penalty sanction" because Cunningham Lindsey was "confronted with the very difficult position of having to move forward in a potential excess of policy limit case with no claim expert."  App. 66.  Cunningham Lindsey then filed a mandamus petition with the court of appeals to review this decision.  App. 69-70.  The Tyler Court of Appeals asked Deep East to respond.  App. 71.

In their final pre-trial report, Cunningham Lindsey's lawyers noted that the case would be tried to a jury, and that there was a 30% chance of a take-nothing verdict.  App. 72-86.  The report stated there was only a 20% chance that DETSIF would obtain a verdict of $5.277 million.  *Id*.  Another great strength of the case was that the damages would be limited to the 2000-2002 contract.  App. 87-88.

   **B.**   *SVB informs Cunningham Lindsey that there will not be coverage without evidence of timely notice.*

Despite the fact that its lawyers had repeatedly counseled Cunningham Lindsey to notify Underwriters, Cunningham Lindsey failed to do so.  App. 89-91.  Although Cunningham Lindsey informally talked about the case with SVB in March 2005 (long after the expiration of the Policy Period), Cunningham Lindsey still did not provide SVB with documentation regarding the case, despite numerous and repeated requests for such information.  App. 92-98.  Cunningham Lindsey contacted Underwriters' only after its expert withdrew.  App. 194.

SVB responded that there was no evidence that it had been provided notice of the Claim

in accordance with the requirements of the Policy, and that in the absence of notice, coverage under the Policy had not been triggered.  App. 99-101.  SVB asked Cunningham Lindsey for evidence that timely notice had been provided.  *Id*.  SVB also looked for, but never found this evidence.  App. 102-118.  On August 26, 2005, Cunningham Lindsey asked Underwriters to participate in a mediation scheduled for September 7, 2005.  App. 100.  Underwriters declined because, in the absence of notice during the Policy Period, coverage under the Policy had not been triggered.  App. 100.

### C.   *Deep East and Cunningham Lindsey sign a September 7 mediation agreement.*

At the mediation held on September 7, 2005, Deep East and Cunningham Lindsey signed a settlement contract (the "Agreement").  Cunningham Lindsey did not advise SVB of the terms of the Agreement before executing it.  App. 192-93.

The Agreement provided that Cunningham Lindsey would never have to pay anything to Deep East.  *Id*.  In exchange, Deep East acquired Cunningham Lindsey's purported claims against the Lloyd's Underwriters.  *Id*.  Cunningham Lindsey waived its right to a jury trial and agreed to try the case to the Court.  *Id*.  The parties agreed to conduct the trial in summary form. *Id*.  Each side was limited to five hours of trial time.  *Id*.  The parties agreed (1) to present evidence in summary form, including depositions; (2) limit the number of live witnesses per side to four; (3) to the admit of all prior deposition testimony and exhibits; (4) that all documents listed on each other's previously exchanged exhibit lists were admissible; (5) that no further proceedings were to be conducted other than the pretrial conference; and (6) that no hearings would be had on any pending motions before the Court.

Cunningham Lindsey also agreed to dismiss the pending mandamus petition on the expert issue the very next day.  *Id*.  The parties also agreed not to seek a new trial or file an appeal of any judgment.  *Id*.

In addition, the parties agreed that the Court would set the exact amount of damages after a summary bench trial.  *Id*.  The Agreement guaranteed Deep East the remainder of the AIG policy, even if the Court awarded it nothing after trial.  *Id*.  In the event the Court found for Deep East in an amount in excess of $6,000,000, then Deep East could try to recover up to $6,000,000 from Cunningham Lindsey's insurers.  *Id*.  If the Court found for Deep East in an amount between the amount remaining on the AIG policy and $6,000,000, then Deep East could attempt to recover the awarded amount from Cunningham Lindsey's insurers.  *Id*.

Deep East agreed to release Cunningham Lindsey after Cunningham Lindsey had complied with a turnover order compelling it to assign its cause of action for indemnity to Deep East.  *Id*.

Most importantly, Deep East could try to collect the money only from Cunningham Lindsey's insurers: Deep East specifically agreed that it would not abstract or execute any judgment against Cunningham Lindsey, and that it would release Cunningham Lindsey .  *Id*.  As a result of the Agreement, Cunningham Lindsey knew that the trial would never affect it monetarily.  App. 13-13A.  Indeed, the trial was conducted simply to determine how much insurance money Deep East would try to collect.

> **D.**   ***The parties attend their pretrial conference the next day.***

The Court conducted the pretrial conference in the Underlying Lawsuit the day after the mediation.  App. 122-25.  The proceedings took place primarily off the record.  *Id*.  The judge was advised of the terms of the Agreement even though he would be the sole finder of fact.  App. 126-29; 14-15; 195.  That same day, Cunningham Lindsey dismissed its petition for writ of mandamus, assuring that it would proceed to trial without a claims handling expert.  App. 187-91.

## E.   *Cunningham Lindsey files this lawsuit with the assistance of Deep East.*

Cunningham Lindsey filed this lawsuit on September 9, 2005, two days after the mediation and the day after the parties' pretrial conference.  App. 141-145.  The lawsuit did not disclose the existence of the Agreement.  *Id*.  Cunningham Lindsey was fully protected, the case had been resolved, and the trial of the Underlying Lawsuit did not matter to Cunningham Lindsey monetarily.  App. 13-13A.

Even though the complaint designated Cunningham Lindsey as the plaintiff in this case, the lawyers for Deep East apparently prepared and filed it.  App. 146-47.  Service on Underwriters was delayed by agreement of Cunningham Lindsey and Deep East.  *Id*.  Underwriters would not be served until almost 5 months later, after Deep East filed a motion to intervene and a unopposed motion to substitute itself as the sole plaintiff.  Docket #8, 9.  Cunningham Lindsey did not oppose either of these motions.[5]

## F.   *The Trial Occurs on September 15, 2005.*

The General Counsel for Cunningham Lindsey, who had attended the mediation and signed the Agreement, did not even attend the summary bench trial or receive updates on the proceedings.  App. 16A-B.

Very few objections were made during the trial.  Indeed, Cunningham Lindsey's lawyers believed the parties had agreed not to object to evidence.  App. 127, 137.  Before the Agreement, Cunningham Lindsey vigorously fought to limit Deep East's case to a single contract spanning the years 2000-2002.  After the Agreement, Cunningham Lindsey pre-admitted the other ten years of contracts, and failed to object to testimony regarding the additional contracts.  App. 119-121.  Then, when Cunningham Lindsey raised the failure to plead the additional contracts, the

---

[5] The motion to intervene and to substitute would have been opposed by SVB.  Because the assignment was void, DETSIF had no basis for the intervention or the substitution.

court overruled the objection. App. 131-40.

      **G.**      *The parties draft and enter the October 19 judgment.*

After trial, Deep East and Cunningham Lindsey worked together to draft the final judgment for the court to sign.  The draft from Deep East contained the sentence:  "The Court orders execution to issue for this Judgment."  Cunningham Lindsey rightly complained that the sentence contravened the agreement not to execute.  App. 148-51.  Deep East agreed but explained:

> Yes, we agreed that we would not execute once we receive a turnover order for Cunningham Lindsey's claims against the excess carrier.  However, I think the judgment needs to say that we can execute so that we can get the turnover order and pursue the claims against Lloyds.

*Id*.  The parties ultimately agreed on the judgment that contained the sentence Deep East wanted, and, the court entered judgment for Deep East and assessed $3,932,028 in damages, plus $677,116.77 in prejudgment interest.  App. 152-54.

      **H.**      *The parties draft and effectuate the December 19 Turnover Order and Release.*

The parties then set to work on the turnover order, a prerequisite to Cunningham Lindsey's release.  App. 119-121.  In drafting the turnover order, however, Deep East attempted to re-write the contract.  It explained the change to Cunningham Lindsey:

> We understand that what we are asking differs from what was agreed to at mediation.  In light of the present circumstances, however, I think it is prudent for Cunningham Lindsey and Deep East Texas to enter into the attached agreement. . .

App. 155-165.  A few days later, Deep East sent a revised agreement that was "entirely consistent with the mediation agreement, except Deep East cannot give Cunningham Lindsey a full release until after the litigation with Lloyds is finished."  App. 166-74.  Both parties agreed and the turnover order, assignment and covenant to limit execution were all executed.  App. 175-183.

## ARGUMENTS AND AUTHORITIES

### I.      SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  As demonstrated in the statement of undisputed facts, this case is ripe for summary judgment.

### II.     THE LAW PROHIBITS DEEP EAST'S RECOVERY IN THIS LAWSUIT

Before Deep East can prevail, it must meet two important prerequisites:  (1) it must have a valid assignment of Cunningham Lindsey's rights against Underwriters, and (2) it must have a judgment against Cunningham Lindsey that is enforceable against Underwriters.  If Deep East lacks either of these elements, it may not recover.  In this case, public policy both invalidates Deep East's assignment and dictates that the judgment it obtained against Cunningham Lindsey is unenforceable against Underwriters.  Thus, Deep East fails to meet both of its prerequisites and cannot recover as a matter of law.

#### A.      *The Background of* **Gandy**

The Texas Supreme Court put an end to sweetheart deals like the one presented here in the *Gandy* case.  *See* Timothy D. Howell, *So Long "Sweetheart,"—State Farm Fire & Casualty Co. v. Gandy Swings Pendulum Further to the Right as the Latest in a Line of Set Backs for Texas Plaintiffs*, 29 ST. MARY'S L.J. 47 (1997).

In *Gandy*, Julie Gandy, the plaintiff, and Ted Pearce, the defendant, settled Gandy's claims of sexual molestation before trial.  *Gandy*, 925 S.W.2d at 700.  As part of the settlement, Pearce agreed to a judgment against him and provided an assignment of his claims against his insurer, State Farm.  *Id*. at 700-703.  In exchange for this agreement, Gandy covenanted not to

execute on any judgment that was entered.  *Id*.  The court entered judgment in accordance with the parties' agreement, and Gandy sued State Farm to collect her judgment.  *Id*.  The district court in the coverage case rendered judgment for the plaintiff, and the court of appeals affirmed. *Id*. at 697.  State Farm then appealed to the Texas Supreme Court.

The Supreme Court reversed.  It agreed with State Farm and held that the assignment violated public policy and, therefore, conveyed nothing.  Three elements in the settlement agreement drove the Supreme Court's reasoning.  Those elements were:  "an assignment of a defendant insured's claims against his insurer, a covenant by the plaintiff to limit recovery from the defendant personally, and a judgment for plaintiff against defendant."  *Id*. at 715.  When these three elements are present, the court explained, litigation can be increased and distorted. *Id*. at 711.  The settlement in *Gandy* increased litigation (*i.e.*, brought about an additional lawsuit) because "the entire purpose of the arrangement was to find a way to recover against State Farm."  *Id*. at 712.  Referring to the settlement as a "sham" and one that "perpetrates a fraud" and "an untruth," the Supreme Court reversed and rendered judgment in favor of State Farm.  *Id*.

The three elements that troubled the Supreme Court in *Gandy* are all present in this case: (1) Cunningham Lindsey assigned its claims against Underwriters to Deep East; (2) Deep East agreed it would not execute any judgment against Cunningham Lindsey; and (3) judgment was entered for Deep East and against Cunningham Lindsey.

### B.    *Cunningham Lindsey's Assignment to Deep East Is Invalid Under* Gandy

The validity of this assignment is a question of law for this Court to decide.  *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 397 (Tex. App.–Houston [14th Dist.] 1997, writ dism'd by agr.).  The court in *Gandy* invalidated an assignment of claims like the one in this case because it was (1) made prior to an adjudication of plaintiff's claims against defendant in a fully adversarial

trial; (2) the insurer had tendered a defense; and (3) either (a) the insurer had accepted coverage, or (b) the insurer had made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim.  *Id*. at 714.  The court specifically failed to "address whether an assignment is also invalid if one or more of these elements is lacking."  *Id*.

In this case, the first factor is met because the agreement to assign Cunningham Lindsey's claims against its insurer was made before a fully adversarial trial.  The second two factors are non-factors here because SVB had no right or duty to defend.  App. 30.  The reasoning behind the second two requirements is that an insurer cannot abandon the defense of its insured and then complain that the deal between the parties was not fair to it.  *Gandy*, 925 S.W.2d at 714.  That concern is not present in this case because under the terms of the Policy Underwriters had no obligation or right to defend Cunningham Lindsey, and Underwriters were not obligated to pay proceeds of the Policy until after the insureds had incurred a covered liability.  App. 27,30.

"As the supreme court's opinion in *Gandy* makes clear, [it] has never been hesitant to invalidate schemes and practices devised by litigants that have the effect of increasing or in some way distorting litigation."  *Transportation Ins. Co. v. Heiman*, No. 05-95-00482-CV, 1999 WL 239917, at *9 (Tex. App.–Dallas, April 26, 1999, no pet.) (citing *Gandy* in support of the decision to invalidate an assignment when it was clear that the parties were not adversaries, but were "working together toward a mutual goal - *i.e.*, imposing liability on [the insurer].").

In this case, Cunningham Lindsey and Deep East worked together to benefit each other at the expense of Underwriters.  The Agreement protected Cunningham Lindsey from any legal or financial exposure, and removed any incentive it may have had to defend the Underlying Lawsuit.  *See American Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 177 (Tex. App.–El Paso

1996, writ denied) (finding that the purpose of the covenant not to execute in that case was to find a way to recover against the insurer, which removed the insured's incentive to defend the case).  The Agreement also benefited Deep East because it gave Deep East an opportunity to collect on claims that were weak or that provided a small chance to recover because of Cunningham Lindsey's dire financial straits.  *Gandy*, 925 S.W.2d at 713 (the pre-trial assignment and covenant not to compete "is especially attractive to [the claimant] when his claim against [the insured] is weak, or when his chances of full recovery against [the insured] are small.").  The Agreement was fashioned to relieve Cunningham Lindsey at the expense of Underwriters; therefore, this Court should invalidate Cunningham Lindsey's assignment of claims.

### C. Even If the Assignment Is Deemed Valid, Deep East Cannot Enforce the Judgment from the Underlying Case Against SVB

Although the Supreme Court in *Gandy* reached its decision by invalidating the assignment of the insured's claims against its insurer, it also pronounced:

> [i]n no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee.

*Id.* at 714.  In later cases, the Texas Supreme Court confirmed that even when an assignment is not invalidated, the failure to hold a fully adversarial trial means that the resulting judgment is not enforceable against an insurer.  *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997); *see also First Gen. Realty Corp. v. Maryland Cas. Co.*, 981 S.W.2d 495, 499 (Tex. App.–Austin 1998, pet. denied) (recognizing that *Gandy* requires an "actual trial" before a judgment can be enforced against an insurer).

The Fifth Circuit, following *Gandy*, has refused to enforce a judgment against a defendant's insurer, even when the validity of an assignment is not challenged.  *See, e.g., Burney v. Odyssey Re (London) Ltd.*, 169 Fed. App'x. 828, 829 (5th Cir. 2006) (relying on

*Gandy* in holding that an agreed judgment entered before trial could not be enforced against the defendant's insurer because it was not the result of a fully adversarial trial, even though the agreed judgment was based on a fully adversarial jury finding in an earlier trial between the parties); *Ace Prop. & Cas. Ins. Co. v. Dorismond*, 88 Fed. App'x. 695, 698 (5th Cir. 2004) (finding that a default judgment, because it was not entered as the result of a fully adversarial trial, could not be enforced against the defendant's insurer).

In this case, the summary bench trial was not fully adversarial because the parties signed the Agreement before trial commenced.  Cunningham Lindsey and Deep East agreed *before* the trial that Deep East would never execute a judgment against Cunningham Lindsey in exchange for an assignment of rights against the Lloyd's Underwriters.  A judgment following a agreement not to execute "is a sham because it is not what it is represented to be.  It cannot be collected from the judgment debtor, and that was the parties' intention when the judgment was taken." *Gandy*, 925 S.W.2d at 705 n. 5.

**This factor alone** renders a trial non-adversarial:   "The 'principal problem' with the arrangement is that, once made, the defendant no longer has any incentive to oppose the plaintiff."  *Stroop v. Northern County Mut. Ins. Co.*, 133 S.W.3d 844, 849 (Tex. App. – Dallas 2004, pet. denied) (citing *Gandy*, 925 S.W.2d. at 713); *see also American Eagle Ins. Co.*, 932 S.W.2d at 177 ("Certainly, the covenant not to execute could have turned the damages trial into something less than a vigorous contest."); *First Gen. Realty Corp.*, 981 S.W.2d at 500 ("After agreeing that the Developers would be liable but that the Homeowners would never collect from them, both parties now expect [the insurer] to pay the price of their Covenant.  This is the same kind of sham judgment, rendered without a fully adversarial trial, that the *Gandy* court declared is not binding on the defendant's insurer and is not admissible as evidence of damages in an

action brought against the insurer by the plaintiff's assignee.").

The following additional factors also reveal that the parties worked together and that judgment and this resulting lawsuit was a foregone conclusion:

> 1.  The parties agreed to dismissed the pending mandamus petition on the expert witness issue.

Cunningham Lindsey knew that going to trial without an expert was extremely risky.  As AIG's representative stated, the judge's denial of Cunningham Lindsey's request to substitute an expert was equivalent to a "death penalty sanction."   App. 66.   Yet, in the Agreement, Cunningham Lindsey agreed to dismiss its mandamus petition that preserved the expert issue, to proceed to trial with no expert witness on negligence, and to forgo all appeals on the issue. Proceeding to trial without an expert in a case that "boil[ed] down to the jury assessment of the credibility of the experts at trial," does not constitute a fully adversarial trial.

> 2.  The trial, limited in scope, was held before the judge who had knowledge of the terms of the settlement agreement.

Here, the sole finder of fact – the trial judge - knew about the entire contents of the Agreement before the trial began.  App. 15.  Knowledge of the Agreement may have prejudiced the ultimate decision in the case.   The Agreement revealed that Cunningham Lindsey was covered by liability insurance, that Cunningham Lindsey's assets were not at issue in the trial, and that the parties had already agreed to a range of damages.  Most importantly, the judge knew that none of its decisions would ever be reviewed by anyone.

The implication that a party has liability insurance is so prejudicial that it is reversible error to disclose that fact to the jury.  *Atchison, Topeka & Santa Fe Ry. Co. v. Acosta*, 435 S.W.2d 539, 549 (Tex. App.—Houston [1st Dist. 1968, writ ref'd n.r.e.) ("It is well settled that it is reversible error to disclose to the jury that the defendant has liability insurance"); *see also* TEX. R. CIV. P. 226a, part II, ¶ 9 ("Do not consider, discuss, nor speculate whether or not any

party is or is not protected in whole or in part by insurance of any kind.").  Even though the Underlying Lawsuit was tried to the bench, the same reasoning holds true:  the judge knew that Cunningham Lindsey's assets would never be at stake.

Further, because the settlement agreement dictated that Deep East would collect between the remainder of the eroding AIG policy and $6 million, the judge knew that Cunningham Lindsey had already, in effect, admitted liability.  *See* TEX. R. EVID. 408 (prohibiting evidence of settlements because it tends to show a party's liability).  After learning that the parties had agreed on a range of damages, the court had no incentive to assess damages outside the parties' agreed range.

> 3.   Cunningham Lindsey made very few objections and allowed 12 years of breached contracts to be tried by consent.

Throughout the trial, Cunningham Lindsey made very few objections because Thompson Coe believed there was an agreement not to object.  App. 127, 137.  By virtue of the Agreement, Cunningham Lindsey had agreed to the introduction of contracts spanning the years 1990 to 2000, even though Deep East had only pled the breach of a single contract spanning from 2000 to 2002.  App. 131-40.  Because there was no objection when the earlier contracts were introduced at trial, the court found that Cunningham Lindsey had tried the multiple contracts by consent.  Accordingly, the court awarded damages based on breaches spanning twelve years as opposed to two, without regard to limitations and contrary to Texas law.  *Id.* (at p.13, ln. 4-5.)  The Agreement insulated this inflated judgment from appellate review.

> 4.   Cunningham Lindsey and Deep East worked together and against SVB in this case

Deep East then filed this suit for Cunningham Lindsey, but did not serve SVB.  The parties then turned their attention to completing the documents necessary to execute the plan against Underwriters in the Underlying Lawsuit.  Before serving Underwriters, Cunningham

Lindsey and Deep East prepared and entered final judgment, Cunningham Lindsey executed the formal assignment, the court entered the turnover order, and Deep East filed unopposed motions to intervene and to be substituted as the plaintiff in this case.  The delay in notice allowed the plan to be completed without any interference from Underwriters.

The parties could and should have litigated the coverage issue before the Underlying Lawsuit was concluded.  *See Gandy*, 925 S.W.2d at 714.  However, as evidenced by the order not to serve Underwriters, neither party wanted Underwriters to know about the coverage lawsuit or to interfere with their plan.

### III.   CUNNINGHAM LINDSEY HAS NOT SUFFERED A LOSS UNDER THE POLICY

Because the Agreement included a promise to release Cunningham Lindsey, it would never have to pay the judgment, and, accordingly, the Underwriters' obligation to indemnify it was never triggered.   App. 119-121.   The parties agreed that Deep East would release Cunningham Lindsey when the turnover order was entered.  *Id*.  This promise to release meant that Cunningham Lindsey would never suffer a loss for which it could require indemnification. *See, e.g., Stroop*, 133 S.W.3d at 851-52 (holding that a promise to release the insured caused no loss under the policy thereby resulting in no liability for the insurer.)  In *Stroop*, the parties to the underlying lawsuit entered into an agreement that provided for a release after the parties signed an agreed judgment, a covenant not to execute, and an assignment of rights against the insurer. *Id*. at 851.  The court found that because all of the parties to the agreement intended to enforce the referenced agreements, the insured had been released, and suffered no loss for which it could be indemnified.  *Id*.

### IV.   CUNNINGHAM LINDSEY VIOLATED THE POLICY'S CO-OPERATION CLAUSE

The Policy states that the insureds "agree that they shall not take any action which in any way increases Underwriters' exposure under this Policy."  App. 30;  *Dorismond*, 88 Fed. App'x.

at 697-98 (an insured must take "reasonable steps to avoid legal liability" for its insurer) (citing *Laster v. American Nat'l Fire Ins. Co.*, 775 F. Supp. 985, 995 (N.D. Tex. 1991) and *Gandy*, 925, S.W.2d at 714).

Here, Cunningham Lindsey has breached its duty to SVB under the Policy and common law by increasing Underwriters' exposure by entering into the Agreement, the terms of which were communicated to the finder of fact.  Underwriters' exposure was increased because the Agreement resulted in an agreed-to trial with a limited and summary presentation of evidence.  A high-low agreement on damages was executed.  Valuable appellate remedies were given away.  By agreement, evidence was admitted in bulk without objection, and that very portion of the Agreement later formed the basis of the Court's ruling allowing Deep East a trial amendment that greatly increased the amount of damages.  There is no doubt that, but for the Agreement, Underwriters' exposure would be less than is alleged in this case.

## V.   DEEP EAST'S AFFIRMATIVE DEFENSES OF WAIVER, ESTOPPEL, AND UNCLEAN HANDS FAIL AS A MATTER OF LAW AND BECAUSE DEEP EAST HAS NO EVIDENCE OF CERTAIN ELEMENTS OF THESE DEFENSES

Deep East claims that SVB's suggestion to Cunningham Lindsey before the mediation to "act as a prudent self-insured would, particularly with respect to opportunities to settle the claims against it" somehow created waiver, estoppel, or unclean hands that precludes SVB from arguing *Gandy*.  Docket # 52 at ¶ 25.  Deep East is incorrect.

### A.    *There Was No Waiver*

To prove waiver, a party must show "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."  *Sun Exploration & Production Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987).  When determining waiver, "[t]he question of intent is key."  *Rodriguez v. Classical Custom Homes, Inc.*, 176 S.W.3d 928, 932 (Tex. App.–Dallas, 2005, no pet. h.).  Additionally, the Policy states that the terms of the Policy may not be "deemed

waived or changed except by written endorsement or rider issued by Underwriters to form part of this Policy."  App. 30.

Deep East's argument fails because the letter is not a "written endorsement or rider issued by Underwriters."  As such, the letter does not waive or change the terms of the Policy.

More importantly, the letter is an express reservation of rights and not a waiver.  Docket #52, exhibit B, page 1 ("Underwriters expressly reserve[d] all their rights, remedies, and defenses under the Policy and the law and nothing in this correspondence shall serve to waive any rights, remedies, or defenses that Underwriters may now have or may obtain in the future.")  Because intent is key, and because the intent not to waive is expressly stated in the letter, SVB has not expressly waived any of its rights under the Policy.

Nor did SVB impliedly waive any rights.  The letter cited by Deep East as evidence of waiver occurred *before* the settlement, the agreed-to trial, the judgment, and the turnover order.  Implied waiver cannot exist until the thing waived is in existence.  *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 281 (Tex. App.–Houston [1st Dist.] 2004, pet. dism'd)  It follows that SVB could not have impliedly waived any rights related to settlement, the agreed-to trial, the judgment, and the turnover order because the letter was written before any of these events.

In the alternative to moving as a matter of law, SVB asserts that Deep East has no evidence to prove the elements of waiver.  Specifically, Deep East has no evidence of any intentional act by SVB after the settlement, the agreed-to trial, the judgment, and the turnover order that evidences an intention to waive any rights.

### B.  *Deep East cannot fulfill the elements of estoppel.*

For estoppel, a party must prove the following four elements:  (1) a false representation or concealment of material facts made with knowledge (actual or constructive) of those facts, (2) with intention that it should be acted on, (3) to a party without knowledge, or means of

knowledge of those facts, (4) who detrimentally relied upon those representations.  *Robinson v. Robinson*, 961 S.W.2d 292, 301 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

Deep East has no evidence that SVB made a "false representation or concealment of material facts."  Whether there is coverage under the Policy is a question of law, not of fact.  Moreover, the letter cited by Deep East does not state there is no coverage under the Policy; rather, it states that SVB has no evidence that Cunningham Lindsey provided notice of Deep East's claim as required by the Policy, and that SVB reserves its rights under the law.  Docket #52, exhibit B.  Both of these statements are true.  The reservation of rights was not a false representation of any facts; therefore, Deep East's assertion of estoppel fails as a matter of law.

Further, even if it were a false statement of some fact, Cunningham Lindsey did not rely on the representation to its detriment.  Cunningham Lindsey did not act based upon a belief that there was no coverage.  Indeed, the whole purpose of the Agreement between Cunningham Lindsey and Deep East was premised on the belief that there was coverage.

Most importantly, there was no detriment.  Deep East brings this case as the assignee of Cunningham Lindsey; therefore, Cunningham Lindsey must have relied on the statement of SVB to Cunningham Lindsey's detriment.  There was no detriment; Cunningham Lindsey struck a deal with Deep East to settle the case and avoided any possibility of having to pay money to Deep East.  Cunningham Lindsey could not have asked for a better result.

Moreover, Cunningham Lindsey was never a party without knowledge, or means of knowledge, of the facts allegedly misrepresented.  Cunningham Lindsey knew whether notice had been provided to Underwriters.  Indeed, by the time of the Agreement, it knew that notice had not been provided.  App. 102-118.  With regard to the coverage question, Cunningham Lindsey's own lawyers were telling it there was coverage.  Accordingly, any alleged statement

regarding coverage (or the lack thereof) was not a representation about which Cunningham Lindsey had no knowledge or means of knowledge.

This Court may also enter summary judgment based on no evidence. Deep East has no evidence that SVB made any false statements or concealed material facts from Cunningham Lindsey. There is also no evidence that those actions, even if they occurred, were done with the intention that Cunningham Lindsey act upon those statements.

### C. *Unclean Hands Does Not Apply Because SVB Is Not Seeking Affirmative Relief*

The doctrine of unclean hands only applies as a defense aimed at a party seeking equitable relief. *Randall & Blake, Inc. v. Evans* (*In re Canion*), 196 F.3d 579, 586 (5th Cir. 1999). "A party seeking to invoke this equitable doctrine must show that he has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine." *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.–San Antonio 2003, no pet.). Because SVB is not seeking equitable relief from this Court, the doctrine of unclean hands is inapplicable.

In addition to entering judgment as a matter of law, this Court may enter summary judgment because Deep East has no evidence of an element of the affirmative defense of unclean hands. Specifically, Deep East has no evidence that Cunningham Lindsey cannot be made whole without the application of the unclean hands doctrine.

## VI. CONCLUSION

During the mediation of the Underlying Lawsuit, Deep East and Cunningham Lindsey agreed to resolve their differences only to begin litigation against SVB. The law prohibits Deep East from collecting a judgment that was entered only after the parties were no longer "fully adversarial." Further, all of Deep East's claims for extra-contractual damages and affirmative defenses fail. SVB therefore asks this Court to grant it summary judgment.

## PRAYER

SVB respectfully prays that its Motion for Summary Judgment be granted, that Deep East take nothing by their suit, and that SVB be awarded such other legal and equitable relief to which it may be entitled.

Dated: November 30, 2006                         Respectfully submitted,


                                                 _____/s/ Robert S. Harrell_____
                                                 Robert S. Harrell
                                                 State Bar No.  09041350
                                                 Federal I.D. No.  6690
                                                 1301 McKinney, Suite 5100
                                                 Houston, Texas  77010-3095
                                                 Telephone:  (713) 651-5583
                                                 Facsimile:  (713) 651-5246

                                                 Attorneys for Deep East Texas Self-Insurance
                                                 Fund


                                                 **OF COUNSEL**
                                                 **BOUNDAS, SKARZYNSKI, WALSH & BLACK,
                                                 LLC**
                                                 200 E. Randolph Drive, Suite 7200
                                                 Chicago, Illinois  60601
                                                 Telephone:  (312) 946-4200
                                                 Facsimile:  (312) 946-4270

                                                 Peter F. Lovato
                                                 ARDC No. 1695940
                                                 plovato@bswb.com
                                                 Ellen D. Jenkins
                                                 ARDC No. 6231011
                                                 ejenkins@bswb.com

## <u>CERTIFICATE OF SERVICE</u>

This motion was served on all parties of record via electronic filing on November 30, 2006.

<u>/s/ Robert S. Harrell</u>
Robert S. Harrell